PHILLIP A. TALBERT
United States Attorney
KRISTIN F. SCOTT
ROSANNE L. RUST
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

**FILED**
Aug 29, 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIA DICKERSON,<br><br>    aka "Dulce Pino,"<br>    aka "Maria Dulce Pino Dickerson,"<br>    aka "Dulce Brubaker,"<br><br>Defendant. | CASE NO. 2:24-cr-00252 JAM<br><br>18 U.S.C. § 1343 – Wire Fraud (24 counts); 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 – Securities Fraud; 18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity (7 counts); 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

INDICTMENT

COUNTS ONE THROUGH TWENTY-FOUR: [18 U.S.C. § 1343 – Wire Fraud]

MARIA DICKERSON,
aka "Dulce Pino,"
aka "Maria Dulce Pino Dickerson,"
aka "Dulce Brubaker,"

defendant herein, as follows:

### I. INTRODUCTION

At all times relevant to the Indictment:

1. Defendant MARIA DICKERSON, also known as "Dulce Pino," "Maria Dulce Pino Dickerson," and "Dulce Brubaker," resided in Sacramento County in the State and Eastern District of

1  California. DICKERSON owned and operated California-based corporation, Creative Legal Fundings
2  in CA ("CLF").

3    2.    In approximately December 2020, DICKERSON started her scheme to obtain funds from investors by selling interests in CLF. To do so, she solicited investors through misrepresentations, offered and sold interests in CLF wherein she promised investors fixed rates of return that she knew she could not guarantee, used investor funds to pay off other investors, and used investor funds to pay for a lavish lifestyle that included high-end shopping, gambling, luxury vehicles, and extensive travel. DICKERSON fraudulently represented investments in CLF to be safe and represented the company to be solvent with substantial seed capital from its purported founders.

## II.    SCHEME TO DEFRAUD

3.    Beginning no later than in or about December 2020, and continuing through at least September 2023, in the State and Eastern District of California, and elsewhere, DICKERSON knowingly devised, intended to devise, participated in, and executed a material scheme and artifice to defraud investors, and to obtain money from investors by means of materially false and fraudulent pretenses, representations, promises, half-truths, and the concealment of material facts that she had a duty to disclose, and attempted to do so.

4.    The purpose of the scheme and artifice to defraud was to solicit and receive investor funds, to lull and discourage investors from seeking to withdraw funds, and to convert investor funds to DICKERSON's personal use. More than approximately 140 individuals invested over approximately $10 million with DICKERSON and lost more than approximately $4 million during the course of the scheme. DICKERSON did not have the intention, ability, or financial means to fully repay all of the investments, to perform on the promises she made to investors, or to conduct CLF in the manner which was promised to investors who purchased interests in CLF.

## III.    MANNER AND MEANS OF THE SCHEME

5.    In furtherance of the scheme, DICKERSON utilized the following manner and means, among others:

### DICKERSON Formed CLF

6.    It was part of the scheme and artifice to defraud that DICKERSON created and caused to

be created a purported business, CLF, through which she, and others working with her and at her direction and control, offered investors interests in her company.

7. On or about December 17, 2020, DICKERSON registered CLF with the California Secretary of State as a general stock corporation. In the filing, DICKERSON listed her personal Sacramento residence as the mailing address and street address for CLF. In additional documents filed with the Secretary of State's Office, DICKERSON listed herself as the Chief Financial Officer, as the Assistant Chief Financial Officer, and as the sole Director of CLF. In that same filing, DICKERSON listed "Allen No" as the Chief Executive Officer and "Bill" as the Secretary of the corporation but provided no additional identifying information for either individual.

<u>DICKERSON Made Misleading Statements, Promises, and Representations,</u>
<u>and Concealed Material Facts to Investors and Potential Investors</u>

8. DICKERSON solicited investors throughout the United States during meetings with individuals, through telephone calls, postings on the internet, and through referrals.

9. DICKERSON further communicated with potential investors and investors on various platforms and using various media, including by telephone, social media, remote videoconference, text, and email. DICKERSON's misrepresentations to CLF investors occurred largely on these platforms, and included but were not limited to statements, half-truths, and omissions about how invested funds would be used, where invested funds went, the success of investments, the nature of CLF's business, the liquidity of investments, the financial stability of CLF, when investors would be paid and how regularly investors would be paid, among others.

10. DICKERSON held herself out to potential investors and investors as someone who managed CLF. As the person who held herself out as the CLF investment manager and the primary responsible party for CLF, DICKERSON had a duty to disclose all material business, transactions, and investments to the corporation's investors and partners.

11. Examples of DICKERSON's knowing false representations to investors and potential investors include:

    a. That CLF loaned money to attorneys;

    b. That investor funds were loaned to attorneys;

    c. That each investor would receive a fixed percentage of interest earned on their initial contribution each month;

    d. That investors could choose to either receive a percentage of their purported investment return each month or roll a percentage over to the following month to continue growing their investment;

    e. That CEO 1, the CEO of a multinational publicly traded corporation, was a founding member, board member, partner, and investor of CLF;

    f. That investments and returns were safe and secure;

    g. That CLF's finances would be regularly audited;

    h. That record books of CLF accounts and receipt of CLF transactions were available for inspection by investors;

    i. That unnamed CLF "Partners" contributed a substantial amount of capital by April 2021, in the millions of dollars; and

    j. That CLF Partners were not to, and that CLF Partners did not, receive any salary, fee, or draw for any services or consultations rendered to, or on behalf of, the partnership.

12. DICKERSON also publicized having a lavish and luxury lifestyle online. DICKERSON often posted photographs on social media of herself traveling on private jets, participating in adult pageants, traveling, and with luxury goods.

13. The foregoing false statements and DICKERSON's appearance of living a luxury lifestyle were material to investors in their decisions to invest, maintain their investments, and to encourage others to invest in DICKERSON's scheme.

## DICKERSON Offered and Sold Interests in CLF

14. It was further part of the scheme and artifice that DICKERSON offered interests in her purported business, CLF, for sale to investors. DICKERSON offered increased rates of return to investors who were able to invest higher amounts of money with her than other investors. DICKERSON typically recorded the sale of interests in CLF in investment documents that investors signed and returned to DICKERSON. The investment documents, despite varying slightly over the years and by investors, generally outlined similar terms of each investor's financial contribution to CLF

1  and promised that each month, the investors could either withdraw a return based on a fixed percentage
2  of their invested capital or roll that amount over into their investment balance.

3    15.    Generally, investors had passive roles in the business and investor earnings relied on the efforts of DICKERSON. While on some occasions, investors acted as promoters to recruit new investors from their social circles and affinity groups, DICKERSON was the individual who primarily recruited and communicated with investors on behalf of CLF, solicited funds for CLF, created and submitted investment documents to investors, signed the investment documents, received funds from investors, sent payments to investors, and managed the bank accounts of the business.

16.    The interests in CLF that DICKERSON offered and sold to investors were securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1) and Section 3(a)(10) of the Securities Exchange Act 15 U.S.C. § 78c(a)(10)]. DICKERSON did not register these interests as required with the Securities and Exchange Commission, and no exception to registration was applied.

### DICKERSON Opened Bank Accounts to Receive Investor Funds

17.    It was further part of the scheme and artifice to defraud that DICKERSON opened bank accounts under the name of CLF and that she regularly received investor funds into those accounts.

18.    For example, on or about May 3, 2021, DICKERSON applied to open Bank of America checking account ending in -4121 and registered to "Creative Legal Fundings in CA." On the account opening paperwork for account -4121, DICKERSON listed "President" as her title. The account's bank signature card listed only DICKERSON's name. The registered mailing address for account -4121 was DICKERSON's residence in Sacramento, California.

19.    DICKERSON regularly received CLF investor funds into account -4121. These funds entered the account through various means, including a cashier's check, domestic wire transfers, and peer-to-peer transfers.

20.    DICKERSON transferred funds into account -4121 from other bank accounts she owned and controlled. DICKERSON also transferred funds out of account -4121 to other bank accounts that she owned and controlled.

21.    DICKERSON regularly drew on account -4121 to make personal purchases with investor funds, including luxury shopping, restaurants, and travel.

INDICTMENT                                5

DICKERSON Made Lulling Statements and Lulling Payments

22. It was further part of the scheme and artifice to defraud that DICKERSON used false and fraudulent lulling statements to avoid detection of the scheme by investors and law enforcement, conceal the fact that DICKERSON had converted investor funds to her own use, lull investors to inaction, avoid and delay repaying investors, and obtain additional funds from existing and new investors. DICKERSON also caused others to make such statements to investors on behalf of CLF.

23. DICKERSON also issued lulling payments to some investors and paid money to existing CLF investors that was, in reality, initial contribution money from new CLF investors. These payments were made to avoid detection of the scheme.

DICKERSON Converted Investment Funds to Her Personal Use

24. DICKERSON exercised discretion and control over the management and finances of CLF. DICKERSON frequently comingled investor funds. DICKERSON regularly transferred investor funds from at least one CLF business bank account to other bank accounts that DICKERSON held, including at least one account in the name of another purported business she owned. DICKERSON also frequently used the CLF business bank accounts to directly pay for personal purchases and travel.

25. DICKERSON obtained substantial personal benefits from her scheme. Instead of investing the funds that investors sent, DICKERSON used investor funds in ways that were contrary to what investors had been told, including but not limited to, for her own personal use.

26. DICKERSON used investor funds for personal purchases that included real estate, luxury vacations, costly designer handbags, home furnishings and appliances, multiple high-end luxury vehicles, private jet rentals, extensive gambling, lulling payments to other investors, transfers to DICKERSON's personal bank accounts and to bank accounts controlled by DICKERSON's family members, and cash withdrawals.

### IV. USE OF WIRE COMMUNICATIONS

27. On or about the dates set forth below, in the State and Eastern District of California and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, and attempting to do so, DICKERSON knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and

sounds, and attempted to do so:

| Count | Approximate Date | Description of Wire |
|---|---|---|
| 1 | June 7, 2022 | A phone call between DICKERSON and Investor 1 in Michigan |
| 2 | June 10, 2022 | A phone call between DICKERSON and Investor 1 in Alabama |
| 3 | June 30, 2022 | A phone call between DICKERSON and Investor 2 in Arizona |
| 4 | July 29, 2022 | A phone call between DICKERSON and Investor 1 in Alabama |
| 5 | August 17, 2022 | A phone call between DICKERSON and Investor 3 in Washington |
| 6 | October 5, 2022 | A phone call between DICKERSON and Investor 3 in Washington |
| 7 | November 8, 2022 | $18,000 wire transfer from Investors 4 and 5 to CLF's Bank of America account ending in -4121 |
| 8 | November 10, 2022 | A phone call between DICKERSON and Investor 3 in Washington |
| 9 | November 16, 2022 | A phone call between DICKERSON and Investor 6 in Utah |
| 10 | November 18, 2022 | A remote video-conference meeting between DICKERSON and multiple investors |
| 11 | November 18, 2022 | A phone call between DICKERSON and Investor 1 in Alabama |
| 12 | November 26, 2022 | A phone call between DICKERSON and Investor 1 in Alabama |
| 13 | December 6, 2022 | A phone call between DICKERSON and Investor 6 in Utah |
| 14 | December 14, 2022 | A phone call between DICKERSON and Investor 3 in Washington |
| 15 | December 15, 2022 | $35,000 wire transfer from Investor 3 in Washington to CLF's Bank of America account ending in -4121 |
| 16 | December 15, 2022 | $8,000 wire transfer from Investor 7 to CLF's Bank of America account ending in -4121 |
| 17 | December 15, 2022 | A phone call between DICKERSON and Investor 7 in Washington |
| 18 | January 11, 2023 | A phone call between DICKERSON and Investor 3 in Washington |

| 19 | January 27, 2023 | A phone call between DICKERSON and Investor 2 in Arizona |
|---|---|---|
| 20 | February 2, 2023 | A phone call between DICKERSON and Investor 1 in Alabama |
| 21 | February 6, 2023 | A phone call between DICKERSON and Investor 1 in Alabama |
| 22 | February 13, 2023 | A phone call between DICKERSON and Investor 3 in Washington |
| 23 | March 24, 2023 | A phone call between DICKERSON and the Tooele County Sheriff's Department |
| 24 | July 20, 2023 | A remote video-conference meeting between DICKERSON and multiple investors |

All in violation of Title 18, United States Code, Sections 2 and 1343.

COUNT TWENTY-FIVE: [15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5 – Securities Fraud]

The Grand Jury further charges: T H A T

MARIA DICKERSON
aka "Dulce Pino,"
aka "Maria Dulce Pino Dickerson,"
aka "Dulce Brubaker,"

defendant herein, as follows:

1. Paragraphs 1 through 26 of Counts 1 through 24 are hereby incorporated by reference.

2. Beginning on a date unknown to the Grand Jury, but no later than in or about April 2021, and continuing to in or about July 2023, within the State and Eastern District of California, and elsewhere, defendant DICKERSON willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and course of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of securities, specifically interests in DICKERSON's shell business, Creative Legal Fundings in CA.

All in violation of Title 15, United States Code, Sections 78j(b) and 78 ff; Title 17, Code of

Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

COUNTS TWENTY-SIX through THIRTY-TWO: [18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity]

The Grand Jury further charges: T H A T

MARIA DICKERSON
aka "Dulce Pino,"
aka "Maria Dulce Pino Dickerson,"
aka "Dulce Brubaker,"

1. Paragraphs 1 through 26 of Counts 1 through 24 are hereby incorporated by reference.

2. On or about the dates set forth below, in the State and Eastern District of California, and elsewhere, DICKERSON knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | On or About Date | Monetary Transaction |
|---|---|---|
| 26 | December 6, 2021 | Cashier's check for $92,696.50 issued from defendant DICKERSON's Bank of America account ending in -8843 to purchase a 2022 Mercedes-Benz GLE350 at Mercedes Dealership 1 |
| 27 | March 3, 2022 | $10,600 transaction from CLF Bank of America account ending -4121 at Casino 1 |
| 28 | June 2, 2022 | $10,377.95 transaction from CLF Bank of America account ending -4121 at Casino 2 |
| 29 | June 9, 2022 | Cashier's check for $150,000 issued from defendant DICKERSON's Bank of America account ending in -8843 to purchase a 2022 Mercedes-Benz EQS V4 at Mercedes Dealership 2 |

///
///
///

INDICTMENT

9

| Count | On or About Date | Monetary Transaction |
|---|---|---|
| 30 | July 5, 2022 | Wire transfer of $991,199.99 from defendant DICKERSON's Bank of America account ending in -8843 to purchase a Sacramento single-family residence |
| 31 | August 8, 2022 | Bank card transaction from CLF's Bank of America account ending in -4121 for approximately $30,544.06 used for the purchase of furniture and fixtures at Furniture Store 1 |
| 32 | September 26, 2023 | A $53,000 wire transfer from Ubiquity LLC's Citibank business account ending in -9568 to Title Company 1 |

All in violation of Title 18, United States Code, Section 1957(a).

FORFEITURE ALLEGATION:   [18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Twenty-Five of this Indictment, defendant MARIA DICKERSON, also known as "Dulce Pino," "Maria Dulce Pino Dickerson," and "Dulce Brubaker," shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

    a. A sum of money equal to the total amount of proceeds traceable to such offenses, for which defendant is convicted.

2. Upon conviction of one or more of the offenses alleged in Counts Twenty-Six through Thirty-Two of this Indictment, defendant MARIA DICKERSON shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property, including but not limited to the following:

    a. Real property located at 7710 Dutra Bend Drive, Sacramento, California, Sacramento County, APN: 031-1210-057-000, and

    b. A sum of money equal to the amount of money involved in the offenses, for which defendant is convicted.

3. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Thirty-Two of this Indictment, for which defendant is convicted:

INDICTMENT

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA
_____
FOREPERSON

*[signature]*
_____
PHILLIP A. TALBERT
United States Attorney

No. 2:24-cr-00252 JAM

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA
*vs.*

MARIA DICKERSON

I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 1343 – Wire Fraud (24 counts);
15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 – Securities Fraud;
18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity (6 counts);
18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*   /s/ **Signature on file w/AUSA**

*Foreman.*

*Filed in open court this* __29th__ *day of* __August__, *A.D.* 2024

/s/ R. Alvarez
*Clerk.*

*Bail, $* __No bail warrant to be issued.__

/s/ Jeremy Peterson

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

GPO 863 525

## United States v. Dickerson
### Penalties for Indictment

**Defendant**
Maria Dickerson, also known as "Dulce Pino" and "Maria Dulce Pino Dickerson"

| | |
|---|---|
| **COUNTS 1—24:** | MARIA DICKERSON, also known as "Dulce Pino" and "Maria Dulce Pino Dickerson" |
| VIOLATION: | 18 U.S.C. § 1343 – Wire Fraud |
| PENALTIES: | 20 years in prison; or<br>Fine of up to $250,000 or twice the gross gain or loss;<br>or both fine and imprisonment<br>Supervised release of up to 3 years<br>(on each count) |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

| | |
|---|---|
| **COUNT 25:** | MARIA DICKERSON, also known as "Dulce Pino" and "Maria Dulce Pino Dickerson" |
| VIOLATION: | 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 – Securities Fraud |
| PENALTIES: | 20 years in prison; or<br>Fine of up to $5,000,000;<br>or both fine and imprisonment<br>Supervised release of up to 3 years<br>(on each count) |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

| | |
|---|---|
| **COUNTS 26 – 31:** | MARIA DICKERSON, also known as "Dulce Pino" and "Maria Dulce Pino Dickerson" |
| VIOLATION: | 18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity |
| PENALTIES: | A maximum of up to ten years in prison<br>Fine of up to $250,000 or twice the amount of the criminally derived property involved in the transactions; or both fine and imprisonment<br>Supervised release of up to three years |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**

VIOLATION:   18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES:   As stated in the charging document